IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00491-WJM-CBS

ANTOINE BRUCE
     Plaintiff,
v.

C. WILSON,
A. OSAGIE,
F. CORDOVA, and
F. FETTERHOFF,
     Defendants.

---

# RECOMMENDATION ON DEFENDANTS'
# MOTION TO DISMISS AND PLAINTIFF'S MOTION
# FOR A PRELIMINARY INJUNCTION

---

Magistrate Judge Shaffer

     PENDING before the court is Defendants' Motion to Dismiss (doc. #39) filed on July 16, 2013, and *pro se* Plaintiff Bruce's Motion for a Preliminary Injunction (doc. #48), filed on August 6, 2013. Mr. Bruce filed his Response to the Motion to Dismiss (doc #47) on August 6, 2013. Although D.C.COLO.LCivR 7.1C permits the moving party to file a reply brief within 14 days after the date of service of the response, Defendants allowed that deadline to pass. Accordingly, the court will consider Defendants' Motion to Dismiss to be fully briefed. While Defendants have not responded to Plaintiff's Motion for a Preliminary Injunction, that omission may be explained by the lack of a certificate of service on that motion. *See* Fed. R. Civ. P. 5(a) (stating that a written motion "must be served on every party"). With an Order of Reference (doc. # 23) dated April 23, 2013, this matter was referred to this Magistrate Judge to conduct all proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) and (b). I have carefully reviewed the pending motions and related briefing, taken judicial notice of the court's entire file, and considered the applicable case law. For the following reasons, the court recommends that

1

Defendants' motion be granted and Plaintiff's motion be denied.

PROCEDURAL BACKGROUND

Mr. Bruce, a prisoner in the custody of the Federal Bureau of Prisons (BOP) at the United States Penitentiary, Administrative Maximum (ADX), in Florence, Colorado, initiated this action on February 25, 2013 by filing a *pro se* Complaint seeking compensatory and punitive damages, as well as injunctive relief, and asserting claims, based upon alleged violations of the Eighth Amendment. The original Complaint[1] named as defendants the Federal Bureau of Prisons, Dr. C. Wilson, and "midlevel practitioner" A. Osagie, and asserted that the Defendants "refused to have Bruce examined by a dermatologist to determine a course of treatment [for a skin condition] or to treat his hepatitis."

On April 17, 2013, Plaintiff filed an Amended Complaint (doc. #18). The Amended Complaint named as defendants Dr. Wilson, "mid-level practitioner/PA" Osagie, Health Services Administrator F. Cordova, and "medical records specialist" Y. Fetterhoff. The Amended Complaint alleges that Mr. Bruce "suffers from chronic dermatitis/eczema which is a painful skin condition," as well as a "painful eye condition and requires prescription eyeglasses." According to Plaintiff, he has "repeatedly requested treatment for his medical conditions through verbal and written sick call requests to defendants Cordova, Fetterhoff, Osagie and Wilson," but for the past 15 months those defendants "refused to refer the plaintiff to a dermatologist or a specialist in treating skin conditions, or provide access to same." The Amended Complaint also avers that "Defendant Cordova knew of Defendants Wilson and Osagie's ignoring sick call requests and took no action to compel them to provide treatment." Finally, it is alleged that "Defendant Fetterhoff for over 6 months failed to schedule the plaintiff to be examined by an optometrist

---

[1]The Complaint filed on February 25, 2013 also named Jeremy Pinson as a plaintiff. With an Order (doc. #10) dated March 21, 2013, the claims asserted by Mr. Pinson were severed from this action as the court concluded that the plaintiffs' "claims do not arise out of the same transaction or occurrence, nor can it be said that there is a common question of law or fact under these circumstances relating to [the plaintiffs'] individual medical concerns."

2

to receive eyeglasses resulting in painful headaches, deterioration of vision and difficulty reading or movement." The Amended Complaint asserts three claims for relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971):  deliberate indifference by failing to have Mr. Bruce treated by a dermatologist; deliberate indifference by failing to provide access to an optometrist and prescription glasses; and deliberate indifference "by failing to examine inmates on all sick call requests submitted in the ADX."

Defendants Cordova, Osagie and Fetterhoff (hereinafter, "the Moving Defendants") have moved to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Defendant Cordova is immune from suit under *Bivens* based on his status as a commissioned officer in the Public Health Service, and that Mr. Bruce has not properly asserted a constitutional claim for deliberate indifference to medical needs.[2]  The Moving Defendants further insist that Plaintiff's claims are barred by the doctrine of qualified immunity.

---

[2] Rule 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action. *See* Fed. R. Civ. P. 4(m). Defendant Wilson was named as a defendant in this case upon the filing of the Complaint on February 25, 2013. As of this date, more than 120 days has passed since the filing of the Complaint and the record before the court indicates that Defendant Wilson has not been served with a summons and complaint in this action, service has not been waived on his behalf, and he has not appeared in this action. The Marshal's Service reports that it was unable to serve Dr. Wilson as he is no longer employed by the BOP and no forwarding information was provided. *See* Doc. #34.  A court cannot obtain personal jurisdiction over a party without proper service of process. *See Murphy Brothers, Inc v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted). Sufficient time has been afforded and sufficient efforts have been made to serve Defendant Wilson such that he may properly be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

## ANALYSIS

*A.     Defendants' Motion to Dismiss*

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. Art. III, §2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992). "[T]he party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

"Motions to dismiss pursuant to Rule 12(b)(1) may take two forms." *Amoco Production Co. v. Aspen Group*, 8 F. Supp.2d 1249, 1251 (D. Colo. 1998). First, a party may attack the facial sufficiency of the complaint and the court must accept the allegations of the complaint as true. *Id.* Second, a party may attack the factual assertions regarding subject matter jurisdiction through affidavits and other documents, and the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The present motion appears to be in the nature of a facial attack, wherein the court must accept the allegations in the Complaint as true.

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). *See also Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) ("a Rule 12(b)(6) motion is addressed to the face of the pleading"). The court must accept the well-pleaded allegations of the complaint as true and draw

all reasonable inferences in the light most favorable to the plaintiff. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). However, to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.*

While *pro se* pleadings should be "construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). This court cannot be a *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110. Just as importantly, a plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been pled. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

  1. <u>Claims Against Defendants in their Official Capacities</u>

The Complaint does not specify whether the claims have been brought against Defendants in their official and/or individual capacities. Where a plaintiff fails to indicate the nature of the liability sought, the court should look to "'the substance of the pleadings and the course of the proceedings' to determine whether the plaintiff is suing the defendants in their individual capacities or their official capacities, or

both." *Arceo v. City of Junction City, Kansas*, 182 F. Supp.2d 1062, 1089-90 (D. Kan. 2002) (quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)). Here, where the Complaint is not completely clear, the court will presume that the defendants have been sued both in their official and individual capacities.

"When an action is one against named individual defendants but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neal*, 867 F.2d 589, 590 (10th Cir. 1989) (federal employees, when sued in their official capacities, are immune from suit unless sovereign immunity has been waived) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). *See also Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996). However, it is well-established that the United States is immune from suit unless it has consented to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The United States has not waived its sovereign immunity for constitutional torts. *Bivens*, 403 U.S. at 410. *See also Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 483-86 (1994) (holding that a *Bivens* action may not be brought against the United States).

Plaintiff has not pointed to any waiver of sovereign immunity that would extend to the claims asserted in this case. *See United States v. $30,006.25 in United States Currency*, 236 F.3d 610 (10th Cir. 2000) (recognizing that a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed") (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Accordingly, Mr. Bruce may only proceed against Defendants in their personal capacities. *See also Jaffee v. United States*, 592 F.2d 712, 717 (3d Cir. 1979) (holding that a *Bivens* action may be brought against government officials, not the government itself).

    2.    <u>Claims Against Defendant Cordova</u>

Defendant Cordova has moved to be dismissed from this action based on his absolute immunity as a United States Public Health Service employee. Title 42 U.S.C. § 233(a) "makes the United States the exclusive Defendant for injuries that employees of the Public Health Service cause while acting within the

scope of their employment." *Lurch v. United States*, 719 F.2d 333, 340 n. 10 (10th Cir. 1983). *See also Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) ("Section 233(a) makes the Federal Tort Claims Act the exclusive remedy for specified actions against members of the Public Health Service."); *Muhammad v. Sosa*, 2008 WL 762253, at *2 (D. Colo. Mar. 19, 2008) (dismissing claims against the defendant after holding that as a commissioned officer with the Public Health Service, the defendant was immune to liability for claims arising under *Bivens*); *Jones v. Berhane*, 2007 WL 3054190, at *3 n. 6 (D. Kan. Oct. 18, 2007) (holding that a federal inmate could not maintain a *Bivens* action against prison doctors or certified physicians' assistants for acts or omissions while performing their official duties if they were deemed to be employees of the Public Health Service).

The Amended Complaint does not allege any facts that would suggest that Defendant Cordova is not a United States Public Health Service employee or was not acting within the scope of his employment. Defendant Cordova is properly dismissed from this civil action because the Federal Tort Claims Act is the exclusive remedy for Plaintiff's claims against him.

    3.    <u>Claims Against Defendants Osagie and Fetterhoff</u>

Mr. Bruce alleges these Defendants were deliberately indifferent to his serious medical needs by failing to schedule him for appointments with a dermatologist and an eye specialist. Defendants Osagie and Fetterhoff argue that Mr. Bruce has failed to state a claim for violation of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97,

104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id.* (internal quotation marks and citation omitted). Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. To meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). For a prison official to be deliberately indifferent under the Eighth Amendment, "the official must 'know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference.'" *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

Defendants Osagie and Fetterhoff contend that Plaintiff's allegations of "chronic dermatitis/eczema" and a "painful eye condition [that] requires prescription eyeglasses" do not state a sufficiently serious medical need. The court disagrees. Plaintiff claims that his lack of specialized treatment for his eye condition has resulted in "painful headaches" and further deterioration of his vision. For purposes of the pending motion only, I find these allegations sufficient to satisfy the objective prong of an Eighth Amendment claim. *See, e.g., Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (inmate's

8

need for prescription eyeglasses constituted a serious medical condition where, as result of not having glasses, the inmate suffered headaches, his vision deteriorated, and he was impaired in daily activities); *Mitchell v. Maynard*, 80 F.3d 1433, 1443 (10th Cir. 1996) (removal of prescription eyeglasses from a prisoner "could constitute a violation of his right to be free of cruel and unusual punishment[ ]"); *Neal v. Bolton,* 2008 WL 5156685 at *18 (N.D. Fla. Dec. 9, 2008) (recognizing claim for deprivation of prescription eyeglasses where it caused plaintiff pain and possible deterioration of vision).

Plaintiff's assertion that he suffers from "chronic dermatitis/eczema" is a closer question. In an earlier pleading, Mr. Bruce asserted that his skin condition is "characterized by frequent rashes, burning irritation, and pain." More recently, Mr. Bruce has claimed that his "recurring skin condition . . . causes him immense pain, itching, an inability to sleep at night and tearful frustration, scabs and sores all over his body." (*See* Doc. # 48 at 4 of 13).[3] I am aware of court decisions holding that a skin condition did not qualify as a serious medical condition where there was no allegation that the condition affected the inmate's activities or caused substantial pain. *See, e.g., Johnson v. Sullivan,* 2010 WL 2850787, at *2 (E.D. Cal. July 19, 2010). *Cf. Thompson v. Carlsen*, 2010 WL 3584409, at *6 (N.D.N.Y Aug. 16, 2010) (finding that "Plaintiff's . . . dry, cracked, and itchy skin . . . do[es] not meet the objective standards of a 'serious' medical condition"). Other courts, however, have taken a contrary position. *See, e.g., McKeithan v. Beard,* 322 F. App'x 194, 198 (3d Cir. 2009) ("Although mere 'dry skin' [caused by eczema] may fall short of a serious medical condition," skin that "was so cracked and dry from his condition that it bled and left stains on his shirt" are sufficient to allege a serious medical condition); *McKeithan v. Iannuzzi,* 2011 WL 6782305, at *6 (M.D. Pa. Dec. 21, 2011) ("[E]czema can be a serious medical condition when the skin is so cracked and dry that it bleeds."); *Walker v. Cal. Dep't of Corrs. &*

---

[3]This court may take judicial notice of documents in the public record, including the court's own docket. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Boellstorff*, 540 F.3d 1223, 1126 n.7 (10th Cir. 2008).

*Rehab.,* 2011 WL 5825929, at *4 (E.D. Cal. Nov. 17, 2011) ("Plaintiff has sufficiently shown a serious medical need, based on allegations that she suffered from eczema, with open sores and rashes developing all over her body, causing pain, unbearable itching, and elevated blood pressure."); *Willis v. Loftin*, 2011 WL 6318940, at *3 (N.D. Ill. Dec. 15, 2011) (holding that an inmate suffering from a progressively worsening case of eczema had alleged an objectively serious medical condition for purpose of the Eighth Amendment).  I will assume, without deciding, that Mr. Bruce's allegations regarding his skin condition are sufficient to satisfy the objective component of an Eighth Amendment claim.

Defendants next argue that the Amended Complaint fails to set forth sufficient facts to meet the subjective component of an Eighth Amendment claim:  that they "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Callahan  v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks and citation omitted).   I agree.

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause."  *Whitley*, 475 U.S. at 319.  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).  The Tenth Circuit has

> recognized two types of conduct that may rise to the level of deliberate indifference in a prison medical case: "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating an inmate's condition."  But, our case law firmly establishes that "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."  Examples of such matters "that traditionally fall within the scope of medical judgment are decisions *as whether to consult a specialist* or undertake additional medical testing."  A prison doctor does not violate the Eighth Amendment's prohibit on cruel and unusual punishment when he "simply resolves the question whether additional diagnostic techniques for forms of treatment is indicated."  An Eighth Amendment deliberate indifference claim "is therefore actionable *only in cases where the need for additional treatment or referral to a medical specialist is obvious.*"

*Heidtke v. Corrections Corporation of America*, 489 F. App'x 275, 280 (10th Cir. 2012) (internal citations omitted; emphasis in original).  *See also Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) ("a

complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment") (internal quotation marks and citation omitted); *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) ("prisoner's right is to medical care not to the type or scope of medical care which he personally desires").

The Amended Complaint alleges that Defendant Osagie, as Plaintiff's assigned "mid-level practitioner," was responsible for "scheduling of appointments and follow-up care, initiation of consultations, ordering of diagnostic tests, [and] reviewing results." According to Mr. Bruce, "[f]or over 15 months," Defendant Osagie "refused to refer the plaintiff to a dermatologist or a specialist in treating skin conditions" and "engaged in a custom of not scheduling appointments or following up on requests for medical treatment by ADX inmates." A fair reading of the Amended Complaint suggests that Defendant Osagie is being sued for failing to refer Mr. Bruce to a dermatologist or optometrist outside the Florence correctional complex.

The allegations against Defendant Fetterhoff are even less informative. According to the Amended Complaint, Defendant Fetterhoff, as a "medical records specialist" was "responsible for scheduling inmate appointments with specialists for consultation" but failed "for over 6 months . . . to schedule the plaintiff to be examined by an optometrist to receive eyeglasses." The Amended Complaint seemingly faults Defendant Fetterhoff for failing to act on a request for treatment that Defendant Osagie allegedly never forwarded or made. Indeed, there are no well-pled facts in the Amended Complaint that even suggest Defendant Fetterhoff was aware of Plaintiff's medical conditions. Mr. Bruce concedes that he has never spoken to Defendant Fetterhoff, and simply presumes she is to blame for his failure to see an optometrist.

When measured against well-established precedents, Plaintiff's Amended Complaint fails to state an Eighth Amendment claim against Defendants Osagie and Fetterhoff based upon their alleged failure to provide Mr. Bruce with access to an outside dermatologist and/or optometrist. *See Franklin v. Kansas*

11

*Department of Correction*, 160 F. App'x 730, 735 (10th Cir. 2005) (holding that the failure to refer the plaintiff to a specialist did not constitute deliberate indifference to plaintiff's health in the absence of any indication that plaintiff's condition "obviously required unusual medical skill or ability, or that the prison medical personnel were incapable of attempting to treat Franklin in the first instance"); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (holding that plaintiff's contention that he was denied treatment by a specialist was insufficient to establish a constitutional violation). For that reason I am recommending that the Plaintiff's first and second claims be dismissed without prejudice.[4]

To the extent that Mr. Bruce is alleging a separate Eighth Amendment violation based upon a generalized allegation that "Defendants" failed "to examine inmates on all sick call requests submitted in the ADX," that claim as pled cannot survive challenge under Rule 12(b)(6). As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."

Here, Mr. Bruce merely alleges in conclusory fashion that Defendant Osagie "engaged in a custom of not scheduling appointments or following up on requests for medical treatment by ADX inmates."[5] The Amended Complaint does not contain any facts that would demonstrate or even plausibly suggest such a "customary" practice. As such, this claim also fails under Rule 12(b)(6).

---

[4] If Plaintiff contends, to the contrary, that he has been denied treatment of any kind by any and all medical personal at ADX, those circumstances are not clearly alleged in the Amended Complaint. Thus, I am recommending that the Amended Complaint be dismissed without prejudice.

[5] Mr. Bruce attached to his Motion for a Preliminary Injunction (doc. #48), affidavits from ADX inmates Jeremy Pinson, Vernell Jeffries, and Abdulshahid Al-Muhaimin. These affidavits appear to be identical in all respects, including hand-writing. More to the point, the sweeping generalizations in these affidavits cannot cure the deficiencies in the Amended Complaint. *Cf. Business Loan Center, LLC v. Driskill Industries, Inc.*, 2008 WL 2704390, at *1 (W.D. Okl. July 3, 2008) (holding that allegations or arguments in, or documents attached to, a response brief cannot cure a defective pleading).

    4.    <u>Qualified Immunity</u>

To the extent that Mr. Bruce is suing Defendants Osagie and Fetterhoff in their individual capacities, Defendants raise the defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id*.

As the court has concluded that Mr. Bruce failed to state any claim against Defendants Osagie and Fetterhoff for violation of a constitutional right, these Defendants in their individual capacities are entitled to qualified immunity. *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

B.    *Plaintiff's Motion for a Preliminary Injunction*

The Amended Complaint seeks, in part, "injunctive relief enjoining defendants from denying plaintiff access to a dermatologist and optometrist in a reasonable and timely manner or any treatments recommended by them." Plaintiff's Motion for a Preliminary Injunction renews that same request and additionally seeks an order "compelling defendants to schedule the 2 specialist exams within 30 days." Mr. Bruce contends that immediate injunctive relief is necessary because he "is in pain and severe discomfort every day of his life and the defendants routinely ignore inmate pleas for treatment at ADX."

"The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held." *Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1241 (D. Colo. 2007) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). *See also Valley Community Preservation Commission v. Mineta*, 246 F. Supp.2d 1163, 1165-66 (D.N.M. 2002) (noting that the substantive requirements for granting a temporary restraining order and preliminary injunction are identical). Under Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order or preliminary injunction may be granted only if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant."

A moving party must meet four prerequisites for preliminary injunctive relief: (1) demonstrate a substantial likelihood that he will eventually prevail on the merits; (2) show that he will suffer irreparable injury unless injunctive relief is provided; (3) offer proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) show that the injunction, if issued, would not be adverse to the public interest. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted). *See also Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Soesbe v. Countrywide Home Loans*, 2009 WL 3418212 * 1 (D. Colo. Oct. 20, 2009). *See also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (because "the primary goal of a preliminary injunction is to preserve the pre-trial status quo," a court "should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action - a mandatory preliminary injunction - before a trial on the merits occurs").

"Furthermore, a court must be cognizant of the fact that there are three types of disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo-defined as the last uncontested status between the parties which preceded the controversy until the outcome of the final

14

hearing; (2) mandatory preliminary injunctions which require a party to take some affirmative act rather than refrain from some act; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Soesbe v. Countrywide Home Loans*, 2009 WL 3418212 at *1. "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. Univ. of Colorado.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Here, Mr. Bruce seeks a mandatory order requiring that he receive his preferred medical treatment within a specified period of time. For this reason, the preliminary injunction sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Id.* at 1259, 1261.

Based upon the available record, I find that Mr. Bruce has not sustained his heightened burden of establishing all of the required factors for injunctive relief. As to the first factor, Mr. Bruce must demonstrate a substantial likelihood that he will eventually prevail on the merits. For the reasons set forth in the foregoing Recommendation, I conclude that Plaintiff has not alleged viable Eighth Amendment claims.

To obtain relief under Rule 65, Mr. Bruce also must show that he will suffer irreparable injury unless injunctive relief is provided. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Id.* at 1267 (citation omitted). Even "serious or substantial harm is not irreparable harm." *Id*. "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Id.* While the moving party is not required to demonstrate the certainty of an injury occurring, a speculative injury or the mere possibility of harm will not suffice for the issuance of a preliminary injunction. *Hills Pet Nutrition, Inc. v. Nutro Products, Inc.*, 258 F. Supp.2d 1197, 1205-06 (D. Kan. 2003). I do not find that the available record

clearly or unequivocally shows that Mr. Bruce will suffer irreparable injury unless the specifically requested relief is provided.

Finally, in determining whether preliminary injunctive relief is appropriate, the court must balance the competing interests of the movant, the defendant and the public. In undertaking this balancing analysis, it is generally understood that federal courts should not immerse themselves in the management of prisons. *See, e.g., Taylor v. Freeman*, 34 F.3d 266, 268, 269 (4th Cir. 1994) (holding that "sweeping intervention in the management of . . . prisons is rarely appropriate when exercising the equitable powers of the federal courts . . . especially . . . where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff['s] likelihood of success on the merits have been made"). *Cf. Escobar v. Jones*, 2011 WL 1642429, at *2 (D. Colo. Jan. 10, 2011); *Aranda v. McCormac*, 2009 WL 3839331, at *8 (D. Colo. Nov. 13, 2009). Here, Mr. Bruce would have the court effectively micro-manage the provision of medical care at ADX and intrude in an area that is better left to the expertise of BOP officials and medically-trained professionals. *Cf. Washington v. Hutchinson*, 2009 WL 5217655, at *4 (E.D. Mich. Dec. 30, 2009). I find that extreme step is not warranted by the facts of this case.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that:

1. Defendants' Motion to Dismiss (doc. #39) be GRANTED, the claims against Defendant Cordova be dismissed with prejudice, and the claims against Defendants Osagie, Fetterhoff and Wilson be dismissed without prejudice.

2. Plaintiff Bruce's Motion for a Preliminary Injunction (doc. #48) be DENIED.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk

of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 7th day of October, 2013.

BY THE COURT:

    s/ Craig B. Shaffer
United States Magistrate Judge